IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GULF COAST MINERAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-1264-WKW |
| | ) | [WO] |
| TRYALL OMEGA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ――――――――――――――――― | | |
| TRYALL OMEGA, INC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GULF COAST MINERAL, LLC, | ) | |
| *et al.*, | ) | |
| Counterclaim Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Gulf Coast Mineral, LLC ("GCM"), filed this action seeking a declaratory judgment regarding certain agreements between it and Defendant Tryall Omega, Inc. ("Tryall Omega"), and others.  (Doc. # 1.)  Tryall Omega filed an answer to GCM's complaint, as well as counterclaims against GCM and third-party claims against GCM's members and employees, namely, Gary Billingsley, Patricia Billingsley, Larry Wattles, and Judy Wattles.  (Doc. # 7.)

Before the court is the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by GCM, Gary Billingsley, Larry Wattles, and Judy Wattles (collectively Counter-Defendants).[1]  (Doc. # 31.)  Counterclaim Plaintiff Tryall Omega, Inc. ("Tryall Omega") filed a response.  (Doc. # 35.)  After careful consideration of the arguments of counsel, the applicable law, and the allegations, the court will grant the motion to dismiss but will permit Tryall Omega to amend its counterclaims and third-party claims.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are not contested.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  In ruling on a motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff."  *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation and internal quotation marks omitted); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.

---

[1] Patricia Billingsley did not join the Motion to Dismiss.

2007) ("We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that the pleadings are construed broadly, and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." (internal citations and quotation marks omitted)).

To survive Rule 12(b)(6) scrutiny, however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U.S. at 556. The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

### III. BACKGROUND

GCM and Tryall Omega's dispute arises from their contractual relationship, which was formed after Robert Hynds of Tryall Omega contacted Gary Billingsley

in response to an advertisement about GCM's oil and gas wells business. Gary Billingsley "personally solicit[ed] Robert Hynds for funds to invest in Alabama wells" and "promis[ed] that such working interest investments would be 'great opportunities' for positive cash flow." (Doc. # 7, at 9.) Based upon those representations Tryall Omega purchased an interest in GCM's oil and gas wells in Covington County, Alabama, in early 2013. But all that glitters is not gold. There was no "black gold" or "a-bubblin crude" coming "up through" those wells.[2] Tryall Omega's hope for profits dried up quickly, leading to its contractual dispute with GCM, which lingers on.

In its counterclaim complaint, Tryall Omega alleges that Gary Billingsley knew that the wells would never be profitable or reach payout but failed to disclose this information. Tryall Omega brings nine counts against the Counter-Defendants and refers to the Counter-Defendants collectively as "GCM/Billingsley." (Doc. # 7, at ¶ 7.) The counts include claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c), and state-law claims for breach of contract, fraud, breach of fiduciary duty, accounting, unjust enrichment, negligence, wantonness, and constructive trust. (Doc. # 7, at 16–24.) The factual

---

[2] Jerry Scoggins, Lester Flatt, and Earl Scruggs, *The Ballad of Jed Clampett* (Columbia 1962).

4

background undergirding the counts is set out in paragraphs 8–30, and each count incorporates all preceding paragraphs.  (*See, e.g.*, Doc. # 7, at ¶¶ 31, 39, 43.)

## IV.  DISCUSSION

The Counter-Defendants argue generally that Tryall Omega pleads only broad legal conclusions, fails to allege any act or omission that would support each claim, and fails to connect any act or omission to any particular Counter Defendant.  They also argue that Tryall Omega has filed an impermissible shotgun pleading.

The Counter-Defendants also rely heavily upon a decision from the Southern District of Alabama involving plaintiffs who had also invested in GCM's "real estate interests relating to the development of oil, gas and mineral leases," and sued GCM and the same cast of Billingsley and Wattles characters.  *Valentine Ventures, LLC v. Gulf Coast Mineral, LLC*, No. CIV.A. 14-0352-WS-M, 2015 WL 502038, at *1 (S.D. Ala. Feb. 5, 2015).  In the briefing on the motion to dismiss, the Counter-Defendants conclude every section of their argument by asserting:  "For the same reason the Southern District dismissed this virtually verbatim claim under Rule 12, it should be dismissed here."  (Doc. # 31, at 12–17.)  The Counter-Defendants do not mention, however, that, while the *Valentine Ventures* court dismissed a similar slate of claims for pleading deficiencies, it gave the plaintiffs

an opportunity to replead.  *See Valentine Ventures, LLC*, 2015 WL 502038, at *7. Tryall Omega filed a response in which it contends that it has sufficiently pleaded its claims to survive the motion to dismiss.  (Doc. # 35.)

The discussion proceeds in two parts.  Part A discusses the insufficiency of Tryall Omega's pleadings under the governing standards and explains why the claims require dismissal.  Part B discusses the pitfalls of shotgun pleading and explains why Tryall Omega will be permitted to file an amended pleading to correct the deficiencies.

## A.    Failure to State a Claim

### 1.    *RICO Claim (Count I) and Fraud Claim (Count III)*

In Counts I and III, Tryall Omega alleges that the Counter-Defendants violated RICO through wire and mail fraud (Doc. # 7, at 16–17) and are liable under state law for fraud.  (Doc. # 7, at 18–19.)  The Counter-Defendants argue that the allegations' lack of specificity is grounds for dismissal of the RICO and fraud counts.  (Doc. # 31, at 11–13.)  The court agrees.

A RICO claim under § 1962(c) has four elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "[A] pattern of racketeering activity" requires that at least two

acts of racketeering activity have occurred within a prescribed time period. 18 U.S.C. § 1961(5). Because the "alleged pattern of racketeering consist[s] entirely of the predicate acts of mail and wire fraud, [Tryall Omega's] substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard . . . ." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Federal Rule of Civil Procedure 9(b) provides that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex. rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). To satisfy the Rule 9(b) standard, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (observing that in a prior

decision, it had held that a RICO claim was insufficient under Rule 9(b) because the claim failed to make "specific allegations with respect to each defendant" and instead "lumped together" the defendants in alleging fraud (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997))).

Counts I and III are long on legal conclusions.  These counts accuse "GCM/Billingsley" of "racketeering activity," of "engag[ing] in a pattern of racketeering activity as defined in the RICO Act," of "profit[ing] from an enterprise," of devising a "scheme or artifice to defraud," of forming an "association-in-fact," of "us[ing] the United States mail . . . ," and of "making false representations, promises, and statements concerning material facts . . . ."  (Doc. # 7, at ¶¶ 32–37, 44.)  These averments are nothing more than a legal dictionary regurgitation of the elements of a cause of action under RICO and for a state-law fraud claim.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

Unfortunately, Counts I and III's factual allegations fail to back up their legal conclusions.  The best efforts of Count I and Count III to plead factual

allegations are through their incorporation of "paragraphs 1 through 30" (Count I) and "paragraphs 1 through 42" (Count III), and through incorporation of facts "as set forth above" (Doc. # 7, at ¶¶ 32, 44.)  But the incorporation is unhelpful.  The Counter-Defendants are left to guess which facts "set forth above" support each element of the causes of action.  Additionally, by grouping the Counter-Defendants into a single conglomeration (*i.e.*, "GCM/Billingsley"), Counts I and III fail to identify which Counter-Defendant is responsible for which act of fraud.  *See Brooks*, 116 F.3d at 1381.  The foregoing highlights the pleading deficiencies of Counts I & III, but is not intended to be exhaustive.

In sum, Tryall Omega has failed to meet the pleading requirements of Rules 8 and 9(b) on the RICO count and on the fraud count.  Therefore, Counter Defendants' motion to dismiss Counts I and III is due to be granted.

### 2.   *Breach of Contract (Count II)*

Count II alleges that the Counter-Defendants entered a contractual relationship and bankruptcy settlement agreement with Tryall Omega and then failed to "comply with said agreements and/or promises as stipulated." (Doc. # 7, at 17–18.)  The Counter-Defendants assert that Tryall Omega has failed to plead a plausible breach-of-contract claim because "[t]he 'parties' to the contract are not discernable from the pleading." (Doc. # 31, at 14.)  Tryall Omega responds merely

9

by listing the elements required for breach of contract and contending that it has pleaded those elements.  (Doc. # 35, at 14.)

Under Alabama law, the elements for breach of contract are "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's non-performance, and (4) damages."  *City of Gadsden v. Harbin,* 148 So. 3d 690, 696 (Ala. 2013) (quoting *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) (internal quotation marks omitted)).

The Counter-Defendants' argument that the parties to the contract are not discernable lacks merit.  Tryall Omega's complaint alleges that all the parties were parties to the contract.  Whether Tryall Omega can *prove* a contract with each Counter-Defendant is a question for another day and not one answered on the pleadings.

The Counter-Defendants' argument that dismissal is appropriate for failure of Tryall Omega to plead its own performance has more force, however.  (Doc. # 31, at 14 (citing *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003).) A complaint must support the elements of a cause of action to survive dismissal. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009).  Since a plaintiff's performance is a required element for breach of contract and because

10

Tryall Omega fails to allege in plausible terms its performance, the breach-of-contract claim is due to be dismissed.

### 3. *Unjust Enrichment (Count VI)*

Count VI alleges that the Counter-Defendants unjustly acquired property rights and money through their fiduciary relationship with Tryall Omega and, thus, have been enriched at the expense of Tryall Omega.  The Counter-Defendants argue, first, that the unjust enrichment claim does not plead any facts delineating how any Counter-Defendant was enriched and, second, that an unjust enrichment claim cannot coexist alongside a claim for breach of an express contract.  (Doc. # 31, at 15.)  Tryall Omega argues, however, that it pleaded the unjust enrichment claim as an alternative to (not in addition to) the breach-of-contract claim.  (Doc. # 35, at 18.)

In Alabama, when "an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter." *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996); *see also Gould v. Transamerica Life Ins. Co.*, No. 11-0730, 2012 WL 512667, at *3 (S.D. Ala. Feb. 15, 2012) (Under Alabama law, "it is not possible to have a viable unjust enrichment claim when there is an express contract as to the same subject matter.").  Because Count VI incorporates all of the paragraphs that

precede it, Tryall Omega's complaint simultaneously pleads an express contract (and breach thereof) *and* unjust enrichment.  Under these facts, Alabama law precludes Tryall Omega from succeeding on the unjust enrichment claim. Accordingly, the unjust enrichment claim fails as a matter of law and is due to be dismissed.

### 4. *Breach of Fiduciary Duty (Count IV), Accounting (Count V), Negligence (Count VII), Wantonness (Count VIII), and Constructive Trust (Count IX)*

Counts IV, V, VII, VIII, and IX allege claims for breach of fiduciary duty, accounting, negligence, wantonness, and constructive trust, respectively.  The Counter-Defendants assert that these counts are "formulaic," fail to state a claim, and should be dismissed for the reasons the Southern District of Alabama dismissed similarly pleaded claims.  (Doc. # 31, at 14, 16, 17.)  Tryall Omega counters by reciting in rote fashion the elements of each cause of action and then by cursorily concluding that each count satisfactorily alleges the requisite elements.   (Doc. # 35.)

The Counter-Defendants' reliance on *Valentine Ventures* is largely off the mark. The Southern District of Alabama in *Valentine Ventures* found that the defendants' arguments were insufficient to warrant dismissal of the counts for breach of fiduciary duty, accounting, negligence, wantonness, and equitable trust.

*See, e.g., Valentine Ventures, LLC*, 2015 WL 502038, at *4 (observing that Count IV alleging breach of fiduciary duty "is not nearly as 'formulaic' as is the defendants' presentation." (internal citation omitted)).   To the extent that the Counter-Defendants have repeated the same arguments that the court in *Valentine Ventures* rejected, the Counter-Defendants obtain the same result here.

However, the Counter-Defendants also advocate dismissal of Counts IV, V, VII, VIII, and IX on grounds that these counts are typical of impermissible shotgun pleading.  The shotgun pleading argument hits the mark and requires dismissal of these counts.  Because the counterclaims and third-party claims as a whole (and not just Counts IV, V, VII, VIII, and IX) are subject to dismissal on this basis, the court takes up the subject of shotgun pleading in Part B.

**B.**   **<u>Shotgun Complaints</u>**

The Counter-Defendants accuse Tryall Omega of filing a shotgun complaint. (Doc. # 31, at 3.)  Tryall Omega does not deny the accusation.  Instead, it argues that, given the litigation history between the parties, which has been referenced in the pleadings and briefing, its complaint should provide fair notice to the Counter-Defendants.  In the alternative, Tryall Omega asserts that any deficiencies can be cured by an amendment to its counterclaims and third-party claims.  (Doc. # 35, at 11.)

Impermissible shotgun pleadings take several forms. "The most common type [of a shotgun complaint] is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (surveying more than sixty published decisions about shotgun pleadings and roughly categorizing them into four main types). Another type of shotgun pleading asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. Hence, in a shotgun pleading, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Tryall Omega's pleading fits comfortably within *Weiland*'s foregoing definitions of a shotgun complaint, and Tryall Omega cites no authority where protracted litigation history between the parties excepted a complaint from the shotgun-pleading prohibition. Each count of Tryall Omega's pleadings incorporates every preceding paragraph, without delineation of which previous facts are relevant to the present count, and all nine counts are alleged against all the

Counter-Defendants, without differentiation. Moreover, the majority of the pleading alleges that every action or inaction was committed by each and every Counter-Defendant, making it difficult to discern which facts support which claims and which Counter-Defendant is responsible for which action or inaction. Tryall Omega's pleading is due to be dismissed, therefore, based on its shotgun approach.

The court concludes, however, that Tryall Omega should be given an opportunity to replead. It is the plaintiff's job "to present [its] claims discretely and succinctly, so that [its] adversary can discern what [it] is claiming and frame a responsive pleading." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 n.57 (11th Cir. 2008) (citation and internal quotation marks omitted). When a plaintiff fails to perform its job and the defendant does not move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, *see id.* at 983, the district court has "the inherent authority to demand repleader sua sponte," *Magluta v. Samples*, 256 F.3d 1282, 1284 n.3 (11th Cir. 2001).

Here, Tryall Omega has requested an opportunity to amend its counterclaims and third-party claims in the event they are found insufficient under the governing pleading standards. (Doc. # 35, at 11.) Rather than dismiss Tryall Omega's complaint as urged by the Counter-Defendants, the court will permit Tryall Omega the opportunity to amend the complaint to allege a factual basis for the claims. *See*

*Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1)    The Counter-Defendants' motion to dismiss (Doc. # 31) is GRANTED;

(2)    Tryall Omega is GRANTED until **February 5, 2016**, to file an amended pleading that comports with the applicable pleading requirements. Failure to file an amended pleading by the February 5 deadline will result in dismissal of the counter-complaint and third-party complaint.

DONE this 27th day of January, 2016.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE