UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| GULF COAST MINERAL, L.L.C., | CASE NO. 2:14cv1264-WKW |
| Plaintiff, | MEMORANDUM OPINION DENYING COUNTERCLAIM-DEFENDANT'S MOTION TO DISMISS |
| v. | |
| TRYALL OMEGA, INC.; ROBERT HYNDS; BETH HYNDS, | |
| Defendants/Counterclaim-Plaintiff, | |
| GULF COAST MINERAL, L.L.C.; GARY BILLINGSLEY; PATRICIA BILLINGSLEY; LARRY WATTLES; JUDY WATTLES, | |
| Counterclaim-Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Counterclaim-Defendant Judy Wattles's Motion to Dismiss Counterclaim-Plaintiff Tryall-Omega, Inc.'s claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count One), conspiracy to violate RICO (Count Two), and fraud (Count Three). After reviewing the briefs and all other relevant material properly before the Court, the Court will deny Counterclaim-Defendant's Motion to Dismiss. The Court's reasoning follows.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2012, Robert Hynds, President of Tryall-Omega, contacted Gary Billingsley, a managing member of Gulf Coast Mineral, L.L.C., about investment opportunities that Gulf Coast Mineral had advertised online. (Doc. No. 39, First Amended Counterclaim ¶ 9.) Billingsley

1

solicited Hynds for funds to invest in Alabama oil well fields that were operated by Gulf Coast Mineral. (*Id.* ¶¶ 9-10.) On February 17, 2013, Tryall Omega purchased from Gulf Coast Mineral a 49% working interest investment in the Pleasant Home Field in Covington County, Alabama for $735,000. (*Id.* ¶ 11.) "[P]ursuant to instructions emailed by Judy Wattles," a Gulf Coast Mineral employee, Hynds wired $400,000 to Gulf Coast Mineral's bank account and executed a promissory note for $335,000. (*Id.*) Tryall Omega was also responsible for paying all well expenses and invoices for well maintenance. (*Id.* ¶ 15.)

The investment was fruitless. It its amended counterclaim complaint, Tryall Omega alleges that Billingsley knew that the wells would never be profitable, but concealed the wells' oil to water ratio, financial information, and regulatory violations. (*Id.* ¶¶ 10, 13.) The wells did not produce enough revenue to pay the promissory note and well expenses, Tryall Omega became delinquent, and Gulf Coast Mineral moved to foreclose on Tryall Omega's 49% interest. (*Id.* ¶¶ 16, 18.) On January 10, 2014, Tryall Omega filed for Chapter 11 bankruptcy in the Southern District Court of Texas. (*Id.*) In a settlement approved on May 1, 2014, Tryall Omega agreed to "release, acquit, and forever discharge" Gulf Coast Mineral and its agents "from any and all claims, counterclaims, demands, damages, causes of action, liabilities, or suits of any kind, whether in law or in equity, known or unknown, fixed or unliquidated, conditional or contingent, matured or unmatured, accruing wholly or partially at any time before the date of this Agreement." (*Id.* Ex. 1.)

Tryall Omega alleges that after signing the settlement agreement, Gulf Coast Mineral began creating new fraudulent work charges, Authorizations for Expenditure (AFE), and cash call demands. (*Id.* ¶ 19.) Tryall Omega further alleges that Judy Wattles "submitted false invoices and AFE's for Gulf Coast Mineral" and "compiled false information on Gulf Coast Mineral, L.L.C.'s behalf, in addition to developing and directing the scheme to defraud." (*Id.*) These false invoices

2

and AFEs were allegedly sent on May 1, 2014; June 27, 2014; August 26, 2014; October 1, 2014; and October 13, 2014, and requested payments ranging from $22,907.50 to $147,980. (*Id.*; Ex. 2.)

On December 31, 2014, Gulf Coast Mineral filed a complaint against Tryall Omega and its agents, alleging that Tryall Omega refused to pay its share of well operation expenses and failed to make required payments on the promissory note. (Doc. No. 1, Compl. § 12.) On January 30, 2015, Tryall Omega filed a counterclaim against Gulf Coast Mineral and its agents, which included claims under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1964(c), and state law claims for breach of contract, fraud, breach of fiduciary duty, accounting, unjust enrichment, negligence, wantonness, and constructive trust. (Doc. No. 7, Counterclaim, §§ 16-24.) This counterclaim was dismissed without prejudice on January 27, 2016.[1] (Doc. No. 36.) The Court determined that Tryall Omega's RICO and fraud claims lacked specificity because the complaint left Counter-Defendants guessing which factual allegations supported each element of the causes of action, and which Counter-Defendant was responsible for which act of fraud. (Doc. No. 36 at 8-9.) Tryall Omega filed an amended counterclaim on February 8, 2016 (Doc. No. 39), and Counter-Defendant Judy Wattles moved to dismiss on April 13, 2016 (Doc. No. 41).

### III.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

---

[1] The counterclaim was dismissed by the Honorable W. Keith Watkins, Chief United States District Judge. On June 23, 2016, the case was reassigned to the Honorable Barbara J. Rothstein, United States District Judge. (Doc. No. 54.)

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All reasonable inferences should be drawn in favor of the plaintiff. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.   DISCUSSION

The amended counterclaim alleges that Wattles participated in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (Count I), and conspired to do the same, in violation of § 1962(d) (Count II). She is also accused of fraud (Count III). Tryall Omega's pleadings successfully state a claim for each count.

### A. RICO AND FRAUD (COUNTS I AND III)

RICO created criminal and civil liability for racketeering activity connected to interstate commerce. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). To recover on a civil RICO claim, plaintiffs must prove, "first, that § 1962 was violated; second, that they were injured in their business or property; and third, that the § 1962 violation caused the injury." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To recover under this section, "a civil plaintiff must establish that a defendant (1) operated or managed (2) an

enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

Racketeering activity includes mail fraud and wire fraud. § 1961(1). However, where plaintiffs' § 1962(c) claim "is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Rule 9(b) requires, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, the Plaintiff is required to allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n*, 605 F. 3d at 1291 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). Further, the plaintiff "must allege facts with respect to each defendant's participation in the fraud." *Id.*

Tryall Omega alleges that Gulf Coast Mineral was an "enterprise," as defined by RICO, and that Judy Wattles engaged in a pattern or mail and wire fraud on the enterprise's behalf in order to deprive Tryall Omega of the value of its investments. (Doc. No. 39 ¶ 24.) The amended counterclaim attributes the following actions to Wattles:

(1) On February 17, 2013, she emailed instructions to Robert and Beth Hunds regarding how to wire $400,000 from the Hynds' bank account in Texas to Gulf Coast Mineral's bank account in Alabama. (*Id.* ¶ 11.)

(2) She "submitted false invoices and AFEs for Gulf Coast Mineral" and "compiled false information on Gulf Coast Mineral, L.L.C.'s behalf, in addition to developing and directing the scheme to defraud." (*Id.* ¶ 19.)

The wiring instructions are insufficient to state a claim because Tryall Omega entered into a release on May 1, 2014 that waived liability for all actions predating the release. (*Id.* Ex. 1.) The Court recognizes that release as binding, and will only consider activities that occurred after the release was signed on May 1, 2014.

The allegedly false invoices and AFEs, on the other hand, are actionable. Tryall Omega's initial counterclaim was dismissed because each count of its pleadings incorporated every preceding paragraph; each count was alleged against all of the Counter-Defendants without differentiation; and the Counterclaim mostly alleged that every action or inaction was committed by each and every Counter-Defendant, "making it difficult to discern which facts support which claims and which Counter-Defendant is responsible for which action or inaction." (Doc. No. 36 at 14-15.) The Court recognizes that Tryall Omega has taken steps to cure these deficiencies – barely.

The Amended Counterclaim clarifies that only the first three counts, for RICO, conspiracy, and fraud are brought against Counter-Defendant Judy Wattles. (Doc. No. 39 at ¶¶ 39, 44, and 49.) The Amended Counterclaim further identifies which paragraphs of factual background support each count. (*Id.* at ¶¶ 38, 43, and 48.) Most importantly, the Amended Counterclaim identifies and articulates Judy Wattles's specific role in the alleged scheme, accusing her of submitting false invoices, submitting false AFEs, and compiling false information. Exhibit B, attached to the Amended Counterclaim, identifies the particular dates and amounts of these

6

fraudulent cash calls and AFEs.[2] Gulf Coast Mineral allegedly requested $147,980 on May 1, 2014; $22,907.50 on June 27, 2014; $148,494.50 on August 26, 2014; and $31,874.50 on October 13, 2014. (*Id*. Ex. 2.) Thus, Tryall Omega has identified the precise misrepresentations at issue; the time, place and person responsible for the misrepresentations; the content of the misrepresentations and the manner in which they misled Tryall Omega; and what the defendants gained by the alleged fraud. *See Am. Dental Ass'n*, 605 F. 3d at 1291. These pleadings "provide a reasonable delineation of the underlying acts and transactions allegedly constituting fraud," and give Wattles "fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *See Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 878 (S.D. Fla. 1997).

## B. CONSPIRACY (COUNT II)

In Count II, Tryall Omega alleges that Wattles violated § 1962(d), which makes it a crime to conspire to violate § 1962(c). The count alleges that Wattles and three other Gulf Coast Mineral agents "unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate 18 U.S.C. 1962(c)," (Doc. No. 39 ¶ 44), "agreed to conduct and participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity," (*id*. ¶ 45), and "committed and caused to be committed [racketeering acts which] were overt acts taken in furtherance of the conspiracy" (*id*. ¶ 46). The Count specifically references the factual paragraphs alleging that Wattles submitted false invoices and AFEs and compiled false information. (*Id*. ¶ 43.) The Court notes that these allegations largely provide only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 679. But for the factual allegations supporting the RICO and fraud claim (which nearly

---

[2] Because the spreadsheet of cash call AFEs was attached to the Amended Counterclaim as an exhibit, the Court treats it as part of the Complaint for Rule 12(b)(6) purposes. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

7

fail the pleading standard as well), this Count would be due for dismissal. In its amended form, however, the Counterclaim offers just enough to advance to the next stage. The Court expects Counter-Plaintiff to provide significantly improved factual development in order to maintain this action going forward.

## V. CONCLUSION

For the foregoing reasons, Counter-Plaintiff's Amended Counterclaim adequately pleads claims against Counter-Defendant Judy Wattles for RICO violations, conspiracy, and fraud. Accordingly, IT IS HEREBY ORDERED that Counter-Defendant's Motion to Dismiss (Doc. No. 41) is DENIED.

Dated this 19th day of October, 2016.

Barbara Jacobs Rothstein
U.S. District Court Judge